Filed 5/23/14  Dustin B. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

DUSTIN B.,

　　　　Petitioner,

　　　　　　v.

THE SUPERIOR COURT OF MERCED COUNTY,

　　　　Respondent;

MERCED COUNTY HUMAN SERVICES AGENCY,

　　　　Real Party in Interest.

F069069

(Super. Ct. No. JP000801)

**OPINION**

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Brian L. McCabe, Judge.

Dustin B., in pro. per., for Petitioner.

No appearance for Respondent.

James N. Fincher, County Counsel, and Sheri Lynn Damon, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]　　Before Gomes, Acting P.J., Peña, J. and Sarkisian, J.†

†　　Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Dustin B., in propria persona, seeks an extraordinary writ from the juvenile court's orders issued at a contested six-month review hearing terminating family reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26[1] as to one-year-old Isaiah. We conclude the juvenile court erred in terminating reunification services and grant the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In early April 2013, newborn Isaiah and his mother tested positive for methamphetamine. The mother admitted using methamphetamine and said she had an untreated mental illness. She identified Dustin as Isaiah's father but said she had not seen him for approximately eight months. She said Johnny L. was present for Isaiah's birth but was not Isaiah's father.

The Merced County Human Services Agency (agency) took Isaiah into protective custody and placed him with Dustin's mother, who also had custody of Dustin's oldest child. Dustin denied being Isaiah's father and said he had not seen the mother in approximately seven months. He agreed to take a paternity test but said he would not attend the detention hearing because he was moving to another city. He received mail, however, at his grandmother's address on "R" Street in Merced.

In mid-April 2013, the juvenile court conducted the detention hearing and inquired about Isaiah's paternity. The mother testified she was not married when Isaiah was conceived and Johnny was living with her at the time of conception and was present when Isaiah was born but did not sign the birth certificate. She said Johnny provided her financial support and may have told people Isaiah was his child but a paternity test had not been conducted to identify Isaiah's biological father. The juvenile court reserved the issue of paternity, ordered Isaiah detained and ordered Johnny and Dustin to undergo

---

**1** Statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

paternity testing. Dustin did not appear at the hearing but a month later underwent paternity testing which established his biological paternity.

In May 2013, the juvenile court adjudged Isaiah its dependent and ordered the mother to undergo two psychological evaluations to determine her ability to benefit from reunification services. The court set the dispositional hearing for July 2013.

In July 2013, the agency filed its report for the dispositional hearing and recommended the juvenile court deny the mother reunification services based on the opinion of two psychologists that she suffered from a mental disability that prevented her from benefitting from reunification services. (§ 361.5, subd. (b)(2).) The agency informed the court that Dustin was Isaiah's biological father based on the paternity test results. It also informed the court Dustin had not made himself available to the agency and his whereabouts were unknown. On that basis, the agency recommended the court deny Dustin reunification services under section 361.5, subdivision (b)(1).[2]

In July 2013, at the dispositional hearing, the juvenile court denied mother and Dustin reunification services as recommended and set a six-month review hearing for January 2014. The court ordered the agency to search for Dustin and provide him reunification services if it discovered his whereabouts.

In early December 2013, social worker Genaye Mowrer located Dustin and they met to discuss reunification services. Dustin said he lived in Merced and had been sober for three months and was attending Celebrate Recovery and other support groups through church. He said he had two other children in his care and his goal was to turn his life around for them. According to Mowrer, Dustin was hesitant to participate in reunification services for Isaiah and did not accept her offer of visitation. He did,

---

[2]    Section 361.5, subdivision (b)(1) provides as relevant here that "[r]eunification services need not be provided to a parent … when the court finds, by clear and convincing evidence …: [¶] That the whereabouts of the parent … is unknown."

however, say he wanted appointed counsel and consented to drug testing by providing hair and urine samples. The results were negative.

In December 2013, the juvenile court conducted a hearing on Dustin's request for counsel and appointed an attorney for him. County counsel informed the court that Dustin told Mowrer during a telephone conversation that he wanted to pursue family reunification.

In January 2014, the agency filed its report for the six-month review hearing and recommended the juvenile court terminate Dustin's reunification services because he did not qualify as a presumed father, did not express an interest in assuming custody of Isaiah, did not maintain contact with the social worker, did not request visitation and did not provide documentation verifying his participation in Celebrate Recovery. At the request of Dustin's attorney, the juvenile court set the matter for a contested hearing in March 2014.

In March 2014, at the contested hearing, Dustin asked the juvenile court to provide him reunification services, arguing it was in Isaiah's best interest to do so. Dustin and Mowrer were the sole witnesses.

Dustin testified he struggled with methamphetamine addiction and described his life as an "emotional rollercoaster" until he started participating in Celebrate Recovery in August 2013. He said he had been abstinent since then. Dustin testified that he had two sons, six and eight years old, who lived with him and had been in his custody since 2010. He did not know about Isaiah until May 2013, when Child Support Services contacted him and asked him to take a paternity test. He did not know he was Isaiah's biological father until November or December 2013.

Dustin further testified he did not have any further contact from the agency until November 2013, when he went to the agency office and spoke with a "CPS worker named Maria." He gave Maria his telephone number and address but did not receive a call back. Mowrer contacted him in December 2013, and he told her he wanted to

4

participate in reunification services. He denied telling Mowrer he was worried he could not raise a baby and said she did not discuss visitation with him.

Dustin testified he had a strained relationship with his mother. He said he saw Isaiah for the first and only time when his mother brought Isaiah with her in December 2013 to drop off Christmas presents for his sons. He visited with Isaiah for about 10 minutes. Prior to that, he said he did not know his mother had custody of Isaiah. However, on cross-examination, he testified he knew Isaiah was with his mother after receiving correspondence from the agency at his grandmother's house stating Isaiah was with an "unknown relative." He assumed the unknown relative was his mother. He also knew his mother had custody of Isaiah because he spoke to her on the telephone when she called to find out what he knew of the situation and if he participated in paternity testing. He said he did not ask to visit Isaiah between May and November because he was trying to get his life in order and because he knew Isaiah was with his mother.

Mowrer testified she spoke to Dustin in October after he spoke to Maria. Mowrer told Dustin he had a child in the agency's care and offered him reunification services. He said however that his focus was on his other two children and he was not sure he would be able to participate in services with Isaiah. She spoke to him again in December and told him he could have visits but he did not request any. Mowrer said she had not since received any phone messages from Dustin or any requests for visitation. She did not believe Dustin qualified for services because he did not support Isaiah, participate in his life or visit.

At the conclusion of the hearing, the juvenile court found Dustin failed to participate regularly and make substantive progress in his court-ordered treatment plan despite the agency's reasonable efforts to assist him and that his progress was "nonexistent." The court terminated reunification services and set a section 366.26 hearing.

5

Dustin petitioned this court for review of the juvenile court's setting order under California Rules of Court, rules 8.450-8.452. This court issued an order to show cause and the parties requested oral argument.

This court asked real party in interest to submit supplemental briefing addressing the following issues:

"Whether the juvenile court erred in terminating reunification services at the contested six-month review hearing in the absence of any prior court-ordered reunification plan?"

"Assuming the juvenile court erred in terminating reunification services, was the court's termination order prejudicial to Dustin (c.f. Welf. & Inst. Code, § 361.5, subd. (b)(10))?"

Real party in interest filed supplemental briefing and the parties appeared for oral argument. We conclude the juvenile court prejudicially erred in terminating reunification services and grant the petition.

## DISCUSSION

This case highlights the importance of promptly determining a man's paternity status and applying the appropriate statute. Although the juvenile court never made a paternity finding as to Dustin, it appears from the record that he is Isaiah's biological father. That is to say, he is not Isaiah's presumed father. It makes a difference, as we will explain, because a presumed father has rights that the biological father does not. The right at issue in this case is reunification services.

### I.      *The juvenile court treated Dustin as if he were Isaiah's presumed father.*

A presumed father is the child's "parent" and is accorded the greatest paternity rights, including reunification services. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 448, 451 (*Zacharia D.*).) The presumed father may or may not be biologically related to the child. Nevertheless, he satisfies a legal presumption of paternity. (Fam. Code, § 7611.)

A biological father is one whose biological paternity has been established but who has not achieved presumed father status. (*Zacharia D.*, *supra*, 6 Cal.4th at p. 449, fn. 15.)

6

The biological father is not entitled to reunification services but the juvenile court may order them for him if it determines services will benefit the child. (§ 361.5, subd. (a).)

The parental right to reunification services is expressed in section 361.5, subdivision (a) which requires the juvenile court to provide reunification services to a statutorily presumed father. (§ 361.5, subd. (a).) However, under subdivision (b) of section 361.5, a presumed father may be denied reunification services if he is described in any one of 16 enumerated exceptions. (§ 361.5, subd. (b)(1)-(16).)

In this case, the juvenile court proceeded as if Dustin were a presumed father whose whereabouts were unknown and denied him reunification services under subdivision (b)(1) of section 361.5. The court did so without any evidence Dustin was Isaiah's presumed father or could elevate himself to that status. Indeed, the only evidence on the issue (paternity finding) established Dustin's biological paternity. The court could have on that evidence declared Dustin Isaiah's biological father and denied him reunification services under section 361.5, subdivision (a). Instead, the court denied Dustin reunification services under subdivision (b)(1), set a six-month review hearing and ordered the agency to provide Dustin reunification services if he appeared before the six-month review hearing. The court did not, however, order a specific reunification services plan.

Three months before the six-month review hearing, Dustin met with the social worker and asked to reunify. When the whereabouts of the parent become known prior to the six-month review hearing and the parent requests services, the agency has a duty to seek a modification of the dispositional order. (Cal. Rules of Court, rule 5.695(h)(9).) The method for seeking a modification of the juvenile court's order is to file a section 388 petition.[3]

---

[3] Section 388 allows the parent or other person having an interest in a child adjudged a dependent of the juvenile court to petition the court to change, modify or set aside any order upon grounds of change of circumstances or new evidence. (§ 388, subd. (a)(1).)

In this case, the agency brought Isaiah's case before the juvenile court for the purpose of appointing counsel for Dustin. However, the agency did not seek modification of the dispositional order asking the court to deny Dustin services as Isaiah's presumed father under another subdivision (b) exception, deny him services as Isaiah's biological father under section 361.5, subdivision (a), or order services for him and identify specific services to be provided. Consequently, going into the six-month review hearing, Dustin's paternity status was still undetermined and the agency, operating as if a reunification plan had been developed for him, recommended the juvenile court terminate Dustin's reunification services.

## II.     The juvenile court prejudicially erred in terminating reunification services for Dustin without ever ordering a reunification plan.

At a six-month review hearing, the juvenile court must determine "whether reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent." (§ 366.21, subd. (e).)

In this case, the juvenile court erred in terminating reunification services because no specific services were ordered or offered and no plan was developed. Real party in interest concedes a specific case plan was never developed and, citing *In re Dino E.* (1992) 6 Cal.App.4th 1768 (*Dino E.*), acknowledges the agency was required to do so. The court in *Dino E.* stated:

> "The statutes and rules governing dependency actions clearly require that a family reunification plan be developed as a part of any dispositional order removing a child from its home. [Citation.] A recommended plan must be included in the social study which is submitted to the court prior to any dispositional order in a section 300 case. [Citation.] The reunification plan must be furnished to all parties prior to the hearing so that the parents can be put on notice as to 'what must be accomplished to reunite the family.' [Citation.] Consequently the plan must be specifically tailored to fit the circumstances of each family [citation], and must be designed to eliminate those conditions which led to the juvenile court's jurisdictional finding. [Citation]" (*Dino E.*, *supra*, 6 Cal.App.4th at pp. 1776-1777.)

8

Real party in interest nevertheless argues the juvenile court did not err in finding the agency offered Dustin reasonable services under the circumstances and in declining to extend reunification services beyond the six-month review hearing. We disagree. The agency's failure to produce a specific services plan was not reasonable. (*Dino E.*, *supra*, 6 Cal.App.4th at p. 1777.) It deprived Dustin notice of what he had to accomplish to reunify with Isaiah and rendered the juvenile court powerless to enforce a services plan, assess its reasonableness, and evaluate Dustin's compliance. Further, under the circumstances, the juvenile court's decision not to extend reunification services *was* error. The juvenile court cannot terminate reunification services but must continue them to the 12-month review hearing if reasonable services were not provided. (§ 366.21, subd. (e).) Thus, we conclude the juvenile court's order terminating reunification services was error.

We further conclude the juvenile court's order terminating reunification services was prejudicial in at least two important ways. First, the order is likely to have an adverse effect on Dustin's ability to obtain custody of, or visitation with, his children in the future. A parent's entitlement to future reunification services depends, in part, on the period of reasonable reunification services already received, on the parent's progress with those services, and on whether services were ever terminated in a prior proceeding. (§§ 361.5, 366.21 & 366.22.) Accordingly, an order terminating reunification services for Dustin could be used as a basis for denying him reunification services under section 361.5, subdivision (b)(10) (subdivision (b)(10)) in any subsequent dependency proceedings involving Isaiah, or in any separate dependency proceedings involving other children that Dustin may have. (§ 361.5, subd. (b).)

Subdivision (b)(10) is one of the previously mentioned 16 exceptions to the general rule requiring the juvenile court to provide reunification services to a parent and provides in relevant part:

> "(b) Reunification services need not be provided to a parent … described in this subdivision when the court finds, by clear and convincing

9

evidence …: [¶] … [¶] (10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent … failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from the parent … and … this parent … has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent …."

Real party in interest argues the juvenile court's termination of services order was not prejudicial because the juvenile court evaluates each case on its own merit in deciding whether to deny reunification services to a parent who previously failed to reunify and considers other factors such as the passage of time and the parent's conduct. Therefore, real party further argues any prejudicial impact is speculative. We disagree. The failure to reunify with a child brings a parent squarely within the provisions of section 361.5, subdivision (b)(10) and jeopardizes the parent's ability to reunify. Even so, real party argues Dustin could always petition the court under section 388 to change an order denying him reunification services under subdivision (b)(10). That is true; however, the burden on a section 388 petition is the parent's and the burden is high: the parent must show a genuine change of circumstances has occurred or new evidence has been obtained and undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529.) In our view, the ability to file a section 388 petition after the fact does not mollify the prejudicial effect of denying a parent reunification services under section 361.5, subdivision (b)(10) for whom a court-ordered reunification plan was never ordered. Thus, assuming Dustin qualifies as a presumed father, we conclude the juvenile court's order terminating his reunification services was error and that he was prejudiced by the order.

We also conclude the juvenile court's order terminating reunification services prejudiced Dustin as a biological father because the juvenile court did not consider the facts of his case under the appropriate statutory provision. The juvenile court considered the facts of his case under section 366.21, subdivision (e), as if it were a status review of

10

court-ordered services rather than under section 361.5, subdivision (a), which required the court to determine if providing Dustin reunification services would benefit Isaiah.

We remand the matter to the juvenile court to make a paternity finding as to Dustin and order or deny reunification services under the appropriate statute.

**DISPOSITION**

Let an extraordinary writ issue directing respondent court to vacate its orders of March 11, 2014, terminating reunification services and setting the section 366.26 hearing. Respondent court is directed to hold further proceedings to determine whether Dustin is Isaiah's presumed or biological father, whether Dustin is entitled to reunification services under section 361.5, subdivision (a) as Isaiah's presumed father or whether there is a basis for denying him reunification services under section 361.5, subdivision (b), or whether he is Isaiah's biological father and whether reunification services would benefit Isaiah. This opinion is final forthwith as to this court.

11